IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| NATHANIEL SANDERS, SR., individually and as heir to the ESTATE OF NATHANIEL SANDERS II, and YULONDA SANDERS, individually, and as heir to the ESTATE OF NATHANIEL SANDERS II<br><br>Plaintiffs,<br><br>v.<br><br>LEONARDO QUINTANA and THE CITY OF AUSTIN<br><br>Defendants. | §§§§§§§§§§§§§§§§ Civil Action No. A 09 CA 426 SS |

## PLAINTIFFS' MOTION TO COMPEL INTERNAL AFFAIRS FILE AND KEYPOINT REPORT

TO THE HONORABLE JUDGE SPARKS:

Pursuant to FRCP 37(a), Plaintiffs file this Motion to Compel the Internal Affairs File and KeyPoint Report related to the police shooting death of Nathaniel Sanders II. The Plaintiffs would respectfully show the Court as follows:

### RELEVANT FACTS AND PROCEDURAL HISTORY

1.  On May 11, 2009, Defendant Police Officer Leonardo Quintana ("Defendant Quintana") repeatedly shot and killed Nathaniel Sanders II. Immediately thereafter, the Austin Police Department ("APD") opened an Internal Affairs ("IA") investigation into the shooting. On August 11, 2009, the APD presented the findings of the IA investigation to the Police

1

Monitor's Office. The Police Monitor's Office is part of the Defendant City of Austin and works exclusively with cases related to alleged violations of APD departmental policy.[1]

2. On August 18, 2009, after reviewing the IA investigation of the Sanders shooting, the Police Monitor's Office issued a formal request to the City Manager to obtain an independent 3rd party investigation of the shooting. Put differently, the City of Austin's own oversight body requested that an independent 3rd party investigative body come in and review the APD IA investigation. The City of Austin agreed to this request and hired KeyPoint Government Solutions ("KeyPoint") to conduct this independent investigation. At the time, City Manager Marc Ott stated: "I have confidence in KeyPoint. The City has used this firm in the past and I trust its ability to complete a thorough review of this case."[2]

3. In late September, KeyPoint completed its independent investigative report into the Sanders shooting and issued its Report (the "KeyPoint Report"). On or about October 5, 2009, the City of Austin released a heavily redacted version of the KeyPoint Report to the public and the media. This heavily redacted KeyPoint Report sparked a controversy because part of the Report stated:

> The APD Internal Affairs investigation was "**biased toward the involved officers in a way which undermines the credibility of its investigation** and the confidence which the Department and public have placed in them."

Amazingly, the following day, APD Police Chief Art Acevedo **admitted** there indeed was bias in the APD Internal Affairs investigation towards the involved officers (including Defendant

---

[1] Exhibit 1, Web Page from Office of Police Monitor's Office.

[2] Exhibit 2, Press Release from Marc Ott, City Manager of Austin.

2

Leonardo Quintana) and stated "even when there is an appearance of bias, this is a concern for us."[3]

4. On or about November 5, 2009, Chief Acevedo suspended Defendant Quintana for fifteen (15) days for actions related to the shooting. On the same day, the City of Austin released a less-redacted version of the KeyPoint to the public and media. The less-redacted KeyPoint Report is over 130 pages and contains extensive discussions of the underlying facts of the shooting, analysis of the eyewitness and forensic evidence, and discusses in more detail the evidence of bias in the APD investigation.[4] The City of Austin produced the same redacted KeyPoint to the Plaintiffs in this case and also produced a Memorandum by Assistant Chief David Carter discussing the KeyPoint findings.[5] Taken together, the KeyPoint Report's conclusions about the APD Internal Affairs investigations are shocking. Specifically, based on the unredacted portions of the KeyPoint Report and the Carter Memo, the investigators concluded that:

    a.     The APD Homicide Investigation into the shooting had some "substantive deficiencies."

    b.     The APD Internal Affairs investigation was "biased toward the involved officers in a way which undermines the credibility of its investigation and the confidence which the Department and public have placed in them."

    c.     There were "significant deficiencies in the quality of documentation relating to the training of APD officers."

    d.     Internal Affairs failed to ask pertinent questions about the shooting.

---

[3] Exhibit 3, Austin-American Statesman Article dated October 7, 2009

[4] Exhibit 4, Redacted KeyPoint Report. The heavily redacted parts are between pp. 99-127.

[5] Exhibit 5, Memorandum from Asst Chief David Carter discussing KeyPoint Report

    e.      Officer Quintana did not identify himself as a Police Officer before he decided to shoot Nathaniel Sanders II in the back of the head.

    f.      Internal Affairs assigned two inexperienced detectives as the primary detectives in a fatal and controversial police shooting.

    g.      Officer Quintana's account of the incident contradicts the ballistic evidence developed by forensic expert Tom Bevel (who was hired by the Defendants).

    h.      Internal Affairs did not carefully examine several eyewitness' claims that Nathaniel Sanders' had his hands in the air during this incident.

These are shocking conclusions. The KeyPoint Report creates numerous material factual disputes between Defendant Quintana's version of the event and the eyewitness/forensic evidence in this case. Equally damaging, the KeyPoint Report raises serious questions about the trustworthiness of the APD investigation. All of this information is highly relevant to the Plaintiffs' case because like the KeyPoint investigators, the Plaintiffs do not believe the veracity of Defendant Quintana's story and do not trust APD's investigation.

    5.    Further, the KeyPoint Report also exposed the antics of IA Detective Chris Dunn, who was a <u>lead</u> IA investigator in this case. The KeyPoint Report includes an "egregious email" from Detective Dunn, which states:

> Let's get Sander's probationary records. Also check for records on others. See if he/they were in compliance and what conditions were. If he/they violated curfew and/or carrying gun/using/carrying drugs, **we can make him/them a causation of the entire event**...Guezz, I am so smart I scare myself. Thoughts?[6]

Obviously, the fact that a lead IA APD investigator wanted to "make him [Sanders] a causation of the entire event" shows APD was attempting to pin the blame for this entire incident on the decedent. Put differently, if Sanders actually was the cause of the shooting, why would the APD need to *make him* a causation of the entire event? KeyPoint itself concluded:

---

[6] <u>Exhibit 4</u>, pp. 85-86.

4

> The implication of this email is clear. It appears that irrespective of what the true causation of the event was, Detective Dunn was prepared (and apparently proud) to manufacture a causation for the shootings from the backgrounds of the individuals in the vehicle. The idea that a lead Internal Affairs investigator would engage in such conduct clearly designed to exonerate the officers' actions at the expense of the suspects is extremely troubling.[7]

On November 6, 2009, Chief Acevedo fired IA Detective Chris Dunn for these emails and for showing bias during this investigation.[8] This was a stunning move on the part of Chief Acevedo because it confirmed that, indeed, there was bias in the APD investigation into the shooting. This raises serious questions as to whether the jury can trust APD's investigation (for scores of other reasons, the Plaintiffs do not believe the APD investigation can be trusted and will prove as much to this Court at the appropriate time).

      6.     Needless to say, the KeyPoint Report and the Internal Affairs investigation are critical pieces of discoverable information in this lawsuit. To that end, the Plaintiff served two sets of Requests for Production on the City of Austin requesting any information related to the Internal Affairs investigation, the KeyPoint investigation and any other investigations into this shooting.[9] The City of Austin responded to these Requests by stating they are withholding or redacting responsive documents pursuant to a privilege under Tex. Loc. Gov't Code § 143.089.[10] Notably, the City of Austin is relying on this privilege to justify their refusal to produce the <u>entire</u> and <u>unredacted</u> KeyPoint Report and Internal Affairs file. The Plaintiffs estimate that the City has produced 70% of the KeyPoint Report and Internal Affairs File, and are withholding the

---

[7] *Id.*

[8] <u>Exhibit 6</u>, Austin-American States article dated November 6, 2009.

[9] <u>Exhibit 7</u>, Plaintiffs' First Requests for Production to City of Austin.

[10] <u>Exhibit 8</u>, Defendant's Privilege Log.

remaining 30%. However, the approximately 30% that is being redacted is arguably the most important part because it contains the conclusions of the KeyPoint Report and Internal Affairs and likely contains other important and discoverable information about the shooting.

## ARGUMENT AND AUTHORITIES

### A.  IA File and KeyPoint Report are Discoverable under FRCP 26

7.  FRCP 34(a) requires a party to produce documents "which constitute or contain matters within the Scope of Rule 26(b)[]." FRCP 26(b) permits "discovery regarding any matter not privileged, which is relevant to the subject matter in the pending action." Discoverable information is not limited to admissible evidence, but includes anything "reasonably calculated to lead to the discovery of admissible evidence." The 5th Circuit has explained:

> Courts have traditionally construed "relevance" broadly: information is relevant if it "encompass[es] any matter that bears or, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. Thus, although the district court is customarily accorded wide discretion in handling discovery matters, we will not uphold a ruling which has failed to adhere to the liberal spirit of the Rules or which results in fundamental unfairness at trial. *Coughlin v. Lee*, 946 F.2d 1152 (5th Circuit 1991).

The IA File and KeyPoint Report are clearly discoverable under FRCP 26. A very large part of this lawsuit is determining the truth about what happened on the tragic morning of May 11, 2009. APD conducted an extensive IA investigation into this shooting and has assembled this information in the IA file. The Plaintiff has a basic right under FRCP 26 to learn exactly what APD believes happened that morning. Likewise, the Plaintiff has a basic discovery right to learn what an outside independent 3rd body investigative body believes happened that morning and in the investigations thereafter. The *redacted* KeyPoint Report is devastating to the APD's defense because it unequivocally shows that the APD IA investigation was "biased" and lacked credibility, and shows there are numerous material factual disputes about what occurred that

6

morning. If the redacted KeyPoint Report is this bad for APD, one can only imagine what devastating information must be in the redacted sections of said Report. The Plaintiffs have a right under FRCP 26 to learn what is in the full KeyPoint Report and IA File.

**B. The Internal Affairs File is Discoverable as a matter of 5th Circuit Law**

8. The 5th Circuit and District Courts in this Circuit have consistently ruled that Internal Affairs files are fully discoverable in civil rights actions. See *Carnaby v. City of Houston*, 2008 WL 4546606 (S.D. Tex 2008), *Fraire v. City of Arlington*, 957 F.2d 1268, 1272 (5th Cir. 1992) (quoting an IAD report in a 1983 suit brought against the Arlington Police Department following a police shooting); *Zavalla v. City of Houston*, 264 F.3d 1142 (5th Cir. 2001) (citing the results of an IAD investigation in Title VII case by former police employee); *Coughlin v. Lee*, 936 F.2d 1152, 1159 (5th Cir. 1991) (discussing IAD investigation files discovered in First Amendment action after police officers were allegedly fired for political beliefs). See also *Gravolet v. Tassin*, 2009 WL 1210877 (E.D. La. 2009); *Hargray v. City of New Orleans*, 1992 WL 28061 (E.D. La. 1992); *Dinh v. Fenner*, 1987 WL 9817 (E.D. La. 1987), *Walters v. Breaux*, 200 F.R.D 271 (2001), *Tyner v. City of Jackson*, 105 F.R.D. 564 (S.D Miss. 1985) (collectively, District Courts in this Circuit that have ordered the production of IA Files in similar civil rights cases).

9. The *Carnaby v. City of Houston* decision is especially instructive in this situation. In *Carnaby,* the Plaintiff's son was killed in a controversial police shooting in Houston. The Plaintiff sought the discovery of the Internal Affairs and Homicide investigations into the shooting. The defendant City of Houston did not fight the Plaintiff's requests for these documents but, rather, sought to have a protective order because "the requested items are

7

covered by Texas statutory privilege for law enforcement personnel files and investigative files" and cited to the Tex. Loc. Gov't Code. *Id.* at 2. The Court denied the Defendant's request and first noted that "Texas statutory privilege is not controlling. [] Federal common law privilege applies to federal claims: when considering a federal claim, federal courts apply federal common law, rather than state law, to determine the existence or scope of privilege." *Id.* at 3.

10. More importantly, the District Court in *Carnaby* ruled that the Plaintiff was entitled to Internal Affairs Division investigative files and the personnel files of the involved police officer. The Court noted that "**IAD files are regularly made public through court proceeding**" and then stated "**IAD and personnel files are highly relevant to the case at hand.**" *Id.* (emphasis added).

11. The instant case is almost exactly identical to the *Carnaby* in that it involves a controversial police shooting where the Plaintiffs are seeking the discovery of IA files. In *Carnaby,* the defendant City of Houston sought to limit the open production of the IA files based on privileges extrapolated from the Tex. Loc. Gov't Code. The District Court in Houston roundly rejected the City of Houston's attempts to do this, noted that the FRCP and 5th Circuit law support the discoverability of IAD files, and ordered the production of the IAD files in their full form. *Id.* The Plaintiffs believe that this Honorable Court should do the same and order the full and unredacted production of the IA File and KeyPoint Report.

**C. Tex. Loc. Gov't Code 143 Does Not Apply to IA or 3rd Party Investigations**

12. The City of Austin is asserting a privilege pursuant to Tex. Local Gov't Code § 143.089 to justify its refusal to produce the entire Internal Affairs file and KeyPoint Report.

8

However, Tex. Local Gov't Code § 143.089 only applies to **Personnel Files**.[11] The Internal Affairs file is an entirely separate file than Defendant Quintana's Personnel File. The Internal Affairs file is a collection of information devoted exclusively to the investigation of this police shooting and it is disingenuous for the City of Austin to suggest the IA file is actually the Personnel File. Moreover, the KeyPoint Report clearly has absolutely nothing to do with Defendant Quintana's Personnel File; it is an outside 3rd party's investigation into the police shooting. As a matter of strict construction, the Tex. Loc. Gov't Code §143.089 does not apply to the IA File and KeyPoint Report.

### D. The FRCP and Federal Common Law Trump Tex. Loc. Gov't Code 143.089

13.     Even assuming *arguendo* that Tex. Loc. Gov't Code § 14.089 does apply to the IA File and KeyPoint Report, the 5th Circuit has made it clear that "when considering a federal claim, federal courts apply federal common law, rather than state law, to determine the scope or existence of a privilege." *Coughlin v. Lee*, 946 F.2d 1152 (5th Circuit 1991) (See also *Carnaby v. City of Houston*, 2008 WL 4546606 (S.D. Texas 2008). Federal courts will consider state policies supporting a privilege in weighing the government's interest in confidentiality. *Coughlin* at 1160. However, the Fifth Circuit's opinion in *Coughlin* makes it clear that no blanket privilege exists under federal common law for either IAD or personnel files. *D'Antoni v. Police Officer Roach*, 1997 WL 627601 (E.D. La 1997). Privileges are strictly construed under federal law.[12] To invoke a privilege against disclosure of law enforcement records, the

---

[11] Exhibit 9, Tex. Loc. Gov't Code § 143.089

[12] Privileges are strongly disfavored in federal practice. *ACLU of Mississippi v. Finch*, 638 F.2d 1336, 1344 (5th Cir. 1981)

9

Defendants must make a 'substantial threshold showing' that ***specific harms*** are likely to result from disclosure. *D'Antonio* at 2 (emphasis added).

15. In this case, the Defendants cannot plausibly argue that specific harm will result from the full disclosure of the IA File or KeyPoint Report. Specifically, the Defendants have already produced large parts of these requested documents, which contained devastating information about the Defendants (in this respect, the Defendants have also already arguably waived any claim to privilege). Second, this police shooting and subsequent investigations have been widely publicized, so any claims about the importance of confidentiality are belied by the Defendants' actions (e.g. repeatedly holding press conferences and issuing press releases about this incident). Simply put, the Defendants cannot show this Court "specific harms" that will result from producing the full IA File and KeyPoint Report under the requisite Federal privilege analysis. *Id. Coughlin v. Lee*, 946 F.2d 1152 (5th Circuit 1991).

**E. Public Policy Supports the Production of the IA File and KeyPoint Report**

15. Finally, there are very strong public policy considerations that demand that the IA File and the KeyPoint Report are released in full to the Plaintiffs. This lawsuit is a civil rights action in which the Plaintiffs are alleging that the Defendants violated the Constitutional rights of their son by shooting him in the back of the head while he was barely awake. The alleged bad actors in this case (the Defendants) possess most of the key investigative information about what actually occurred that tragic morning. It is categorically unfair for the Defendants to have this information but refuse to provide it to the Plaintiffs under the guise of 'confidentiality' concerns. A District Court in this Circuit aptly summarizes the dangerousness of the Defendants' position:

> Special caution should be exercised in recognizing a privilege in a civil rights case because application of federal law of privilege, rather than state law, in civil rights

10

actions is designed to ensure that state and county officials may not exempt themselves from the very laws which guard against their unconstitutional conduct by claiming that state law requires all evidence of their alleged wrongdoing to remain confidential. *D'Antoni v. Police Officer Roach*, 1997 WL 627601 (E.D. La 1997) [13]

That is exactly what is occurring here. It is very clear that the IA File and KeyPoint Report contains devastating information about the Defendants' conduct on the morning of May 11, 2009 and in the investigations thereafter. The Defendants simply do not want the Plaintiffs to discover this incriminating information. The Plaintiffs have a right under the FRCP, 5th Circuit law, Federal common law, and via public policy considerations to know the content of this information. To that end, the Plaintiffs respectfully ask that this Court compel the production of the Internal Affairs File and KeyPoint Report in full and unredacted form.

Respectfully submitted,

BARRY & LOEWY LLP

*/s/ Adam Loewy*

---

Adam J. Loewy
State Bar No. 24041353
Carl R. Barry
State Bar No. 24036192
401 Congress Avenue, Suite 1540
Austin, Texas 78701
Phone/Fax: (800) 892-5044

**ATTORNEYS FOR PLAINTIFFS**

---

[13] Indeed, as the 5th Circuit itself noted, "The purpose of enacting 1983 was to ensure an independent federal forum for adjudication of alleged constitutional violations by state officials; there is a 'special danger' in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged." *ACLU of Mississippi v. Finch*, 638 F.2d 1336, 1344 (5th Cir. 1981)

11

## CERTIFICATE OF CONFERENCE

By my signature below, I hereby certify that I conferred with City of Austin Attorney Chris Coppola on this issue. After several phone conversations and email exchanges, Attorney Coppola does not believe the City of Austin needs to produce the IA File or KeyPoint Report in full and unredacted form.

*/s/ Adam Loewy*
_____
Adam Loewy

## CERTIFICATE OF SERVICE

By my signature below, I hereby certify that on December 18, 2009 a true and correct copy of the foregoing document has been served via the Court's electronic filing system to all counsel in this case.

*/s/ Adam Loewy*
_____
Adam Loewy

12