IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NATHANIEL SANDERS, SR. individually and as heir to the ESTATE OF NATHANIEL SANDERS II, and YULONDA SANDERS, individually, and as heir to the ESTATE OF NATHANIEL SANDERS II<br>    Plaintiffs<br><br>V.<br><br>LEONARDO QUINTANA and<br>THE CITY OF AUSTIN | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. A 09 CA 426 SS |

**CITY OF AUSTIN'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL;
CITY OF AUSTIN'S MOTION FOR *IN CAMERA* INSPECTION;
& ALTERNATIVELY, CITY OF AUSTIN'S MOTION FOR PROTECTIVE ORDER**

TO THE HONORABLE SAM SPARKS, UNITED STATES DISTRICT COURT JUDGE:

Defendant, City of Austin (the "City") files its response to Plaintiffs' Motion to Compel Internal Affairs ("IA") File and KeyPoint Report.  (Doc. 14).  The City of Austin also respectfully asks this Court to perform an *in camera* inspection of the disputed documents if it deems such an inspection necessary to dispose of Plaintiffs' motion.  Finally, if the Court decides to grant Plaintiffs' motion to compel production of the complete IA File and KeyPoint report, the City respectfully asks that such documents be produced pursuant to the Court's standard Protective Order.

**RESPONSE TO PLAINTIFF'S MOTION TO COMPEL**

**I.     Facts**

It is undisputed that on May 11, 2009, Leonardo Quintana, a uniformed law enforcement officer employed by the Austin Police Department (APD) shot and killed Nathaniel Sanders II.

APD conducted both a criminal investigation and an IA investigation into the incident.[1]  APD intended its IA investigation to determine whether the officers involved in the incident violated applicable APD policies.[2]  The IA investigation into the May 11, 2009 incident comprises thousands of pages of witness interviews, expert reports, photographs, videos, illustrations, training information, factual summaries, and recommendations.

Pursuant to its contractual agreement with the Austin Police Association, the City of Austin has created the Office of the Police Monitor and the Citizen Review Panel.  *See* Exhibit A, Excerpts from Meet and Confer Agreement.  The Police Monitor and the Citizen Review Panel may review APD IA investigations before they are submitted to the Chief of Police for final consideration.  After reviewing the investigation, the Panel may recommend to the Chief of Police to return the case to IA for further investigation, to review or change APD policies, to impose certain discipline, or to request an independent, third-party review of the investigation. *Id.*  If an independent investigator is retained and a report is prepared, the Meet and Confer Agreement allows release of the report only to the extent information in the report is no longer protected from disclosure by law, i.e. Texas Local Gov't Code 143.089(g).  *Id.*

In this case, the Police Monitor and the Panel reviewed APD's IA investigation into the May 11, 2009 shooting.  The Panel recommended to the Chief that he retain an outside party to conduct an independent investigation.  Ultimately, the City chose to retain KeyPoint Government Solutions, Inc., to review the investigation.  KeyPoint produced a report and made certain conclusions and recommendations to the Chief of Police regarding the investigation and Quintana's alleged violations of APD policies.

---

[1] A Travis County Grand Jury failed to indict Quintana.
[2] Subject to administrative appeal, the Chief of Police is responsible for making the final decision as to whether an officer has violated any APD policy and for determining the appropriate punishment.  TEX. LOC. GOV'T CODE § 143.052.

On or about September 11, 2009, the Chief of Police decided to suspend Defendant Quintana (in addition to another officer on the scene, Siddiqui) without pay for 15 days for violating APD policies by not activating his in-car video recording device.  The Chief did not find that Defendant Quintana violated any policies with respect to his use-of-force on May 11, 2009.  Therefore, Quintana received no discipline from APD in connection with his use-of-force.

Plaintiffs filed their lawsuit on or about June 2, 2009 – while the criminal and IA investigations were still ongoing.  Plaintiffs have since sent 140 Requests for Production to the City of Austin.  The City of Austin has provided thousands of pages documents and continues to supplement its responses.  Specifically, the City has provided (or is in the process of providing) all aspects of its investigations that concern the facts of what transpired on May 11, 2009 – that is witness statements, expert reports, photos, tangible items, timelines, police reports, and audio recordings.  The City has also provided recommendations, conclusions, and factual summaries from the IA File and KeyPoint report related to APD's decision to discipline Quintana for failing to activate his video equipment.  In addition, the City has provided policies, Defendant Quintana's past use of force reports, general investigative documents, statistical information regarding use-of-force by APD generally, training information, other publicly available information, and Department of Justice information into APD's use-of-force in general.  By contrast, the documents withheld or redacted by the City have little or nothing to do with the actual events, but everything to do with conclusions or recommendations to the Chief regarding alleged violations of APD policy that were not sustained.  These conclusions have little relevance to Plaintiffs' case, and, more important, are privileged and confidential by law.

## II. The Withheld or Redacted Portions of the IA File and KeyPoint Report are Privileged and Confidential as a Matter of Law

The City of Austin has withheld or redacted relatively small portions of the IA File (including the KeyPoint Report) pursuant to Texas Local Government Code § 143.089(g). Section 143.089 generally requires certain Texas municipalities (including the City of Austin) to maintain two types of personnel file for every police officer and fire fighter: the "(a)" file and the "(g)" file. *City of San Antonio v. Texas Attorney General*, 851 S.W.2d 946, 947 (Tex. App. —Austin 1993, writ denied). The (a) file must contain certain items, including any letter, memorandum, or document relating to "any misconduct by the fire fighter or police officer if the letter, memorandum, or document is from the employing department and if the misconduct resulted in disciplinary action by the employing department in accordance with this chapter…" TEX. LOC. GOV'T CODE § 143.089(a)(2). A document alleging misconduct must be removed from the (a) file if there is insufficient evidence to support the allegation. *Id*. at 143.089(b). The contents of an individual's (a) file may not be disclosed without the individual's written consent "unless the release of the information is required by law." *Id.* at 143.089(f).[3]

Section 143.089(g) allows cities to maintain for their use "a separate and independent personnel file on a police officer or fire fighter." *Id.* at 143.089(g). The city or department "may not release any information contained in the department file to any agency or person requesting information relating to a fire fighter or police officer." *Id.* This rule is absolute and no court, state or federal, has explicitly recognized an exception when squarely presented with the issue.

Texas courts have uniformly upheld section 143.089(g)'s complete restriction on disclosure. For instance, in *In re Jobe*, 42 S.W.3d 174 (Tex. App. —Amarillo 2001, no pet.), the Amarillo Court of Appeals held that "the obvious legislative intent in its adoption of

---

[3] Presumably, such "other law" would include the discovery rules of the FRCP or the Texas Public Information Act.

[143.089(a)(2) and (g)] is to explicate a method by which the interest of the public in making sure that no unfit person is employed as a peace officer but, at the same time, ensuring that innocent police officers are protected from unsubstantiated innuendos and accusations." *Id.* at 179. The Texas Legislature's method of protecting the reputations of innocent officers is to require placement of disciplinary documents in the (a) file only "if the misconduct resulted in disciplinary action by the employing department." *Abbott v. City of Corpus Christi*, 109 S.W.3d 113, 120 (Tex. App. —Austin 2003, no pet.), *citing* TEX. LOC. GOV'T CODE § 143.089(a)(2). Otherwise, all other documents connected with investigations that did not result in discipline are placed in the (g) file, and remain confidential.[4]

Federal courts have not frequently been faced with the specific issue of whether § 143.089(g) protects documents from discovery in federal lawsuits. In fact, the undersigned has located only one unpublished decision, from the Northern District of Texas, that deals directly with this issue. In *Carter v. Anderson*, 2004 WL 2208488 (N.D. Tex., 2004) (unpublished), the plaintiff filed a civil rights complaint, pursuant to 42 U.S.C. § 1983, against the defendant, a San Angelo, Texas police officer, in connection with defendant's arrest and search of plaintiff. *Id.* at *1. The plaintiff apparently sought discovery of the Internal Affairs investigation file related to the incident and maintained by the San Angelo Police Department. *Id.* at *7. Defendant resisted discovery and sought *in camera* inspection and a protective order permitting it to withhold the documents pursuant to Texas Local Government Code § 143.089(g). *Id.* Both parties agreed that the San Angelo Police Department had not disciplined the defendant for his actions. The court considered the plain language of 143.089(g) and concluded that it did not permit release of

---

[4] Although not discussed by *In re Jobe*, the confidentiality provisions of 143.089(g) serve a related purpose. Because officers and police departments know that unsustained allegations are not subject to disclosure in any forum, they are more likely to fully cooperate with IA investigations, and police departments are more likely to investigate complaints.

5

the documents.  *Id.*  Relying on the rationale presented in the *In re Jobe* case cited above, the *Carter* court further held that it would deny discovery under FRCP 26(c), to protect the defendant from "annoyance, embarrassment, oppression, or undue burden, or expense."  *Id.*  The court also considered the fact that the plaintiff had been provided with all of the documents "relevant to his arrest, including the booking information and police report…"  *Id.*  Accordingly, the court held that documents sought by Plaintiff were not subject to release.  *Id.*

This case bears important similarities to *Carter*.   For instance, the parties agree that APD did not discipline Quintana for his use of force.  Thus, there can be no doubt that 143.089(g) applies to the portions of the IA file that deal specifically with the conclusions and recommendations related to unsustained allegations against Quintana.  These portions of the file are confidential and "may not be released to any agency or person."  TEX. LOC. GOV'T CODE § 143.089(g).  Perhaps more importantly, there is no dispute that, as in *Carter,* the City has provided Plaintiffs with all of the documents from its investigative files that concern the events of May 11, 2009, including police reports, photos, witness statements, etc.  These are the documents Plaintiffs need to prove their case, not IA recommendations and conclusions.

The KeyPoint report is also protected by section 143.089(g).  The City retained KeyPoint and solicited the report through the contractual mechanism that allows the Police Monitor and the Citizen Review Panel to review ongoing IA investigations.  *See* Exhibit A.  Indeed, the KeyPoint report is analogous in many respects to a report of a consulting-only expert, which is not subject to discovery under Federal Rules.  Like any consulting expert, KeyPoint has no firsthand knowledge about the case and acquired all of its knowledge through its review of the information gathered in the course of the APD investigations.  The KeyPoint report was used by the Chief of Police for the limited purpose of deciding whether Quintana violated APD policies

and for determining whether APD policies needed to be changed. To the extent that the KeyPoint report discusses allegations of APD policy violations against Quintana that were not sustained by the Chief, it is part of the (g) file. Accordingly, the portions of the KeyPoint report that contain conclusions and recommendations related to allegations against Quintana that did not result in discipline are confidential and not subject to release under the plain language of section 143.089(g).[5] Releasing this information would thwart state law, and the legislative intent underlying that law.

Plaintiffs cite several cases to refute the notion that a state confidentiality law should apply in a federal civil rights case; however, the only case cited by Plaintiffs that even mentions Texas state statutes is another unpublished district court case, *Carnaby v. City of Houston*, 2008 WL 4546606 (S.D. Tex. 2008) (unpublished). Contrary to Plaintiffs' assertion, the *Carnaby* case is not applicable here because, in that case, the city did not withhold or redact IA files under section 143.089(g). In *Carnaby*, the city agreed to provide all requested documents to the plaintiff, but sought a protective order that would seal certain discovery, restrict its use to the trial, and require its return within 60 days after the trial. *Id.* at *1. Although the city apparently claimed that the documents at issue were covered by Texas Local Government Code section 143.1214 (which is materially different from section 143.089(g), especially in cases involving a death allegedly caused by excessive force), the city did not assert any privilege with respect to the documents, it only claimed certain documents should not be made public. *Id.* at *2. Thus, any opinion by the *Carnaby* court as to the applicability of a state law privilege is purely advisory.

---

[5] The City has released the vast majority of the KeyPoint report. The City has released all parts of the KeyPoint report that discuss facts known to the public, that discuss allegations and recommendations involving Quintana's failure to activate his video recorded, and that do not discuss recommendations or conclusions related to unsustained allegations against Quintana.

In any event, this case is substantially different from *Carnaby* on its facts. Here, the city has not argued that the entire IA file should be withheld from the Plaintiffs or the public. Instead the City contends that limited portions of the IA file and the KeyPoint report are privileged under section 143.089(g) – a statute not considered by the *Carnaby* court. Thus, the City's position is decidedly more nuanced than the position taken in *Carnaby*. In this case, the City is not asserting a blanket privilege that protects the entire IA file and the entire KeyPoint report, but instead it has attempted to tailor its privilege assertions to comply with a mandatory state law that no court, including *Carnaby*, has ever rejected. This approach, though it may require painstaking review of the documents in question, complies with the letter of 143.089(g).

The only principled argument advanced by the Plaintiffs is that state privilege laws do not automatically apply in federal civil rights cases to create a blanket privilege for IA files. Plaintiffs cite *Coughlin v. Lee*, 946 F.2d 1146 (5th Cir. 1991) to support their contention that courts should engage in a balancing test to decide whether to apply state privileges in federal civil rights suits. *Id.* at 1160. In general, according to *Coughlin*, courts should weigh the importance of the information to the plaintiff against legitimate governmental concerns for keeping the information confidential. *Id.* at 1160.[6]

In this case, any assessment of the interests of the parties should begin by looking at the Plaintiffs' case and the nature of the documents they are seeking. The Plaintiffs are attempting to prove an intentional violation of their constitutional rights. The City has provided (or will provide) all parts of its investigation that relate to the facts of what transpired on May 11, 2009. It has also released documents that discuss how its investigation proceeded. The documents

---

[6] Plaintiffs cite several other cases that talk about IA files generally, or the applicability of Louisiana law. These cases are not relevant here. The City has not asserted any privilege for the entire investigative file. To the contrary, it has provided thousands of pages from the IA file. The portions withheld by the City are withheld pursuant to a specific statutory privilege – section 143.089(g).

withheld or redacted by the City discuss unsustained allegations that Quintana violated APD policies; not the underlying facts. IA's and KeyPoint's recommendations and conclusions about violations of APD policies are not relevant to whether Quintana violated Plaintiffs' constitutional rights. Moreover, release of this information would not only violate a state statute, but it could unfairly tarnish Quintana's reputation and ultimately prejudice both him and the City at trial. In the end, the City's assertion of privilege in this case is not an effort to obfuscate or hide any of the facts of what happened on May 11, 2009, or of any misconduct that occurred during the IA investigation. Instead, the City is attempting to comply with a mandatory state law, while at the same time respecting the public's and the Plaintiffs' rights to non-privileged portions of the IA file and KeyPoint Report.

For these reasons, the City respectfully asks the Court to deny Plaintiffs' motion to compel, and find that the documents redacted or withheld by the City are privileged and confidential, and protected from discovery by section 143.089(g).

## MOTION FOR *IN CAMERA* INSPECTION

To the extent the Court deems it necessary, the City respectfully asks the Court to perform an *in camera* inspection of the documents withheld or redacted by the City so that the Court may determine the applicability of a privilege.

## MOTION FOR PROTECTIVE ORDER

In the alternative that the Court decides to grant all or part of Plaintiffs' Motion to Compel, the City asks that the Court enter its standard Protective Order, and to order that these documents be disclosed pursuant to the terms of that Protective Order. Such a Protective Order is appropriate in this case to avoid any undue prejudice to Defendant Quintana and the City.

**PRAYER FOR RELIEF**

For the foregoing reasons, the City respectfully asks this Court to deny Plaintiffs' motion to compel. If the Court deems it necessary to dispose of Plaintiffs' motion, the City asks the Court to grant its motion for *in camera* inspection. Finally, in the alternative that the Court chooses to grant Plaintiffs' motion to compel, the City asks the Court to enter a Protective Order and compel the production of any documents withheld by the City pursuant to that order.

RESPECTFULLY SUBMITTED,

DAVID ALLAN SMITH
CITY ATTORNEY

\s\ Christopher Coppola
CHRISTOPHER COPPOLA
Assistant City Attorney
State Bar No. 24036401
City of Austin-Law Department
Post Office Box 1546
Austin, Texas 78767-1546
(512)974-2161
(512)974-6490 [FAX]
christopher.coppola@ci.austin.tx.us

ATTORNEYS FOR DEFENDANT
CITY OF AUSTIN

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th of December, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Adam Loewy
Carl R. Barry
BARRY & LOEWY, LLP
401 Congress Avenue
Austin, Texas  78701

COUNSEL FOR PLAINTIFFS

Robert Icenhauer-Ramirez
Attorney at Law
1103 Nueces St.
Austin, Texas 78701

COUNSEL FOR
DEFENDANT QUINTAN

        \s\ Christopher Coppola
        CHRISTOPHER COPPOLA