IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NATHANIEL SANDERS, SR., individually and as Personal Representative of the ESTATE OF NATHANIEL SANDERS II, and YULONDA SANDERS, individually, and as heir to the ESTATE OF NATHANIEL SANDERS II | § § § § § § § | |
| Plaintiffs, | § § | Civil Action No. A09 - CA- 426 SS |
| v. | § § | |
| LEONARDO QUINTANA and THE CITY OF AUSTIN | § § § | |
| Defendants. | § § § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE SPARKS:

Plaintiffs, NATHANIEL SANDERS, SR., individually and as Personal Representative to the ESTATE OF NATHANIEL SANDERS II, and YULONDA SANDERS, individually and as heir to the ESTATE OF NATHANIEL SANDERS II, files this First Amended Complaint against Defendants LEONARDO QUINTANA and THE CITY OF AUSTIN and would show the Court and Jury the following in support thereof:

**I.    PARTIES**

1.    Plaintiff Nathaniel Sanders Sr. is the father of Nathaniel Sanders II.  He brings this claim in his individual capacity as a statutory wrongful death beneficiary and as an heir to the Estate of Nathaniel Sanders II pursuant to Texas Civil Practices and Remedies Code §§71.002 *et. seq.* and

§71.021.  Nathaniel Sanders Sr. is also the Personal Representative of the Estate of Nathaniel Sanders II.

2.     Plaintiff Yulonda Sanders is the mother of Nathaniel Sanders II.  She brings her claim in her capacity as a statutory wrongful death beneficiary and as heir to the Estate of Nathaniel Sanders II pursuant to Texas Civil Practices and Remedies Code §§71.002 *et. seq.* and §71.021.

3.     At the time of his death, Nathaniel Sanders II was a citizen of the United States and resided in Austin, Travis County, Texas.   An Estate for Nathaniel Sanders II has been established.

4.     Defendant Leonardo Quintana is an Austin Police Department officer and is being sued in his individual capacity.  Defendant Quintana has been served and is represented by counsel.

5.     Defendant the City of Austin is a municipality organized under the laws of Texas and operates the Austin Police Department ("APD").  Defendant the City of Austin has been served and is represented by counsel.

## II.    JURISDICTION AND VENUE

6.     As this case is brought pursuant to 42 U.S.C. §1983, this Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3).

7.     This Court has general personal jurisdiction over Officer Quintana as he resides in the Western District of Texas, and over the City of Austin, as it is a Texas municipality in the Western District of Texas.

8.     This Court has specific *in personam* jurisdiction over all Defendants because this cause arises out of conduct which caused the wrongful death of Nathaniel Sanders II which occurred in Austin, Travis County, Texas, within the Western District of Texas.

Plaintiffs' First Amended Complaint - page 2

9.      Venue of this cause is proper in the Western District pursuant to 28 U.S.C. §1391(b) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in Austin, Texas, within the Western District of Texas.

## III.   BACKGROUND

### A.    Introduction

10.     Nathaniel Sanders II was the beloved son of Nathaniel Sanders Sr. and Yulonda Sanders.

11.     On May 11, 2009, at the age of 18, Nathaniel Sanders II's life was senselessly cut short when Defendant Quintana shot him repeatedly in the head and body.

12.     At no time whatsoever did Nathaniel Sanders II pose an imminent threat of death or serious injury to Defendant Quintana.

### B.    The Morning of the Shooting

13.     On May 11, 2009, at approximately 5:00 am, Nathaniel Sanders II was sound asleep in the back seat of a Mercedes-Benz Station Wagon (the "Car") that was being driven by Michael Franklin.

14.     Another man, Sir VaLawrence Smith, was sound asleep in the passenger seat of the Car.

15.     Michael Franklin drove the Car into the Walnut Creek Apartment complex in order to drop his sleeping passengers off at a friend's apartment.

16.     Upon entering the apartment complex, Michael Franklin observed that Austin Police Officer Leonardo Quintana was following the Car.

17.     Defendant Quintana did not have patrol car lights and/or siren activated.

18.     Michael Franklin exited the Car and Defendant Quintana approached him.

19.     Defendant Quintana then detained Michael Franklin.

20.    Defendant Quintana then approached the back seat of the Car where Nathaniel Sanders II was sleeping.

21.    In clear violation of APD policy, Defendant Quintana did not attempt to wake up Nathaniel Sanders II by activating his patrol car siren or bullhorn.

22.    In clear violation of APD policy, Defendant Quintana never turned on the lights on top of his patrol car.

23.    In clear violation of APD policy, Defendant Quintana never turned on dashboard video-camera in his patrol car.

24.    Instead, without any notice whatsoever to Nathaniel Sanders II, Defendant Quintana opened the backdoor of the car and attempted to physically waken Nathaniel Sanders II.

25.    Defendant Quintana's actions caused Nathaniel Sanders II to suddenly waken and have a startle reaction.

26.    Defendant Quintana then overreacted to Nathaniel Sanders II's startle reaction, pulled away from the doorway, drew his gun and backpedalled to the back of the Car.

27.    From behind the Car, Defendant Quintana began shooting his gun into the back and side windows of the Car.

28.    Defendant Quintana repeatedly shot Nathaniel Sanders II with callous disregard and fatally placed several bullets in Nathaniel Sanders II's shoulder area and in the back of his head.

29.    As a result, Nathaniel Sanders II died.

30.    Defendant Quintana was subsequently suspended for fifteen (15) days by Chief Art Acevedo for actions related to the shooting.

Plaintiffs' First Amended Complaint - page 4

31.     Sadly, APD has long tolerated unconstitutional conduct by officers and the disproportionate uses of force against minorities, and kept officers with violent tendencies, like Defendant Quintana, on the force.

32.     Nathaniel Sanders II's death is also further proof that APD uses deadly and non-deadly force in a shockingly disproportionate fashion against minorities.

33.     As reported in the *Austin American Statesman*, the likelihood that APD officers will use force against an African-American is demonstrably higher than it is for whites.

34.     In addition, from January 1, 1999 to the present, the vast majority of individuals shot and killed by APD were African-American or Hispanic.

35.     APD policymakers were well aware of these disparities.

36.     In fact, in 2004, then City Manager, Toby Futrell, publicly acknowledged that the City's data reflected disparities in the ways minorities were treated in the use of force and use of lethal force.

37.     And when asked to comment directly on such disparities, then Mayor Will Wynn stated, "[t]he data exposed in [the *Statesman*] series make it clear that we have a problem."

38.     In other words, APD officers shoot and kill minorities at a shockingly disproportionate rate.  Needless to say, such a policy/practice is discriminatory and unconstitutional.

39.     In light of the APD's toleration of these disparities, it is unlikely that Defendant Quintana would have even fired his weapon if Nathaniel Sanders II had been white.

40.     Thus, Defendant Quintana and the City of Austin as a whole are all responsible for the death of Nathaniel Sanders II.  But for their conduct, Nathaniel Sanders Sr. and Yulonda Sanders would still have their son.

Plaintiffs' First Amended Complaint - page 5

IV.   **FEDERAL CAUSES OF ACTION**

    A.    **Excessive Force Claim Against Defendant Quintana**

41.    Plaintiffs incorporate by reference all of the foregoing and further allege as follows:

42.    Defendant Quintana was acting under color of law as a member of the Austin Police Department at all relevant times.

43.    Defendant Quintana shot Nathaniel Sanders II multiple times when Nathaniel Sanders II posed no imminent threat of death or serious injury to Quintana.

44.    Defendant Quintana's conduct was clearly excessive to the need and was objectively unreasonable in light of well-established law, and resulted in the death of Nathaniel Sanders II.

45.    As a proximate result of Defendant Quintana's conduct, Nathaniel Sanders II died and Plaintiffs suffered damages.

46.    Thus, Defendant Quintana is liable to Plaintiffs under 42 U.S.C. §1983.

    B.    **42 U.S.C. §1983 Claim Against The City of Austin**

47.    Plaintiffs incorporate by reference all of the foregoing and further allege as follows:

48.    Defendant Quintana was acting under color of law as an APD officer when he violated the constitutional rights of Nathaniel Sanders II and APD's policymakers ratified and approved Quintana's misconduct.

49.    In addition, the City of Austin had the following policies and/or practices in effect prior to the shooting:

- Employing excessive force against minorities;

- Employing deadly force disproportionately against minorities;

- Inadequate warning systems to discipline and/or weed out potentially dangerous officers;

- Failing to adequately investigate use of force by APD officers;

- No training for officers on how to waken sleeping citizens; and

- Inadequate training.

50.     Each of these policies was actually known, constructively known and/or ratified by the City of Austin and its policymakers and were promulgated with deliberate indifference to Nathaniel Sanders II's rights as guaranteed under the Fourth and/or Fourteenth Amendments to the United States Constitution.  Moreover, the known and obvious consequence of these policies was that APD officers would be placed in recurring situations in which the constitutional violations described within this complaint would result.  Accordingly, these policies also made it highly predictable that the particular violations alleged here would result.

51.     Moreover, such policies/practices were a moving force of Nathaniel Sanders II's death and the constitutional injuries he suffered.  Accordingly, the City of Austin is liable under 42 U.S.C. §1983 to Plaintiffs for their damages.

52.     Moreover, APD policymakers and as yet unknown supervisors were responsible for supervising Defendant Quintana and APD officials regarding their uses of force.   These individuals were aware of Defendant Quintana's penchant for excessive force and knew he had previously been violent to fellow officers and citizens.  For example, in August 2006, Defendant Quintana violently forced his way into the personal residence of Lori Noriega, a fellow APD officer.  He was subsequently charged with criminal trespass and suspended by APD due to his actions.  Defendant Quintana has also been the subject of at least fifteen (15) separate Internal Affairs investigations related to his use of force primarily against minorities in this community. In addition, in January 2010, Defendant Quintana was arrested and charged with Driving While

Plaintiffs' First Amended Complaint - page 7

Intoxicated (DWI), thereby demonstrating Defendant Quintana's continued pattern of breaking the law.

53.     Despite such knowledge, APD's higher-ups permitted Defendant Quintana to remain on the force and continue to use force at alarming rates and in an excessive manner.

54.     As a result of such inadequate supervision and/or training, Defendant Quintana continued to employ dangerous levels of force at an alarming rate.   As a proximate result, Nathaniel Sanders II died.

## V.     CLAIM FOR DAMAGES

55.     The actions and omissions of Defendants deprived Nathaniel Sanders II of his civil rights under the United States Constitution.   Moreover, these acts and omissions by Defendants, their agents, employees, and/or representatives, proximately caused and/or were the moving force of the injuries and damages to Plaintiffs and proximately caused and/or were the moving force of the wrongful death of Nathaniel Sanders II.   Accordingly, Plaintiffs Nathaniel Sanders Sr. and Yulonda Sanders assert claims under 42 U.S.C. §1983 and the Texas wrongful death and survivorship statutes.

56.     Plaintiffs Nathaniel Sanders Sr. and Yulonda Sanders, in their capacities as statutory heirs asserting survival claims on behalf of Nathaniel Sanders II's Estate have incurred damages including, but not limited to, the following:

- physical pain and mental anguish suffered by Nathaniel Sanders II prior to his death; and

- funeral and burial expenses.

57.     Plaintiffs Nathaniel Sanders Sr. and Yulonda Sanders, in their individual capacities asserting wrongful death claims have incurred damages including, but not limited to, the following:

- past and future mental anguish; and

- past and future loss of companionship, society, services, and affection with their son.

## VII.   <u>ATTORNEYS' FEES</u>

58.     As it was necessary for Plaintiffs to hire the undersigned attorneys to file this lawsuit, Plaintiffs are entitled to an award of attorneys' fees and costs including, but not limited to, expert witness fees pursuant to 42 U.S.C. §1988(b) if they prevail.

59.     In compliance with Rule 38, Federal Rules of Civil Procedure, Plaintiffs hereby notify all parties of Plaintiffs' demand to a jury trial and tender the appropriate fee.

## VIII.  <u>PRAYER FOR RELIEF</u>

60.     Plaintiffs hereby ask that Defendants be cited to appear and answer and that Plaintiffs be awarded judgment against Defendants for:

(a)     compensatory damages;

(b)     all damages available under 42 U.S.C. §1983;

(c)     attorneys' fees, including expert fees, under 42 U.S.C. §1988;

(d)     pre-judgment interest and post-judgment interest at the highest rate allowable under the law;

(e)     all costs including, but not limited to, any expert fees; and

(f)     all other relief in equity or in law to which Plaintiffs may be entitled.

Respectfully submitted,


*/s/ Adam Loewy*

By_____

      ADAM LOEWY
      State Bar No. 24041353
      CARL R. BARRY
      State Bar No. 24036192

      **BARRY & LOEWY LLP**
      401 Congress Avenue
      Suite 1540
      Austin, Texas 78701
      Phone: (800) 892-5044
      Fax: (512) 687-3441


      **ATTORNEYS FOR PLAINTIFFS**